Exhibit A



1  Richard P. Traulsen – State Bar #016050
   **BEGAM, MARKS & TRAULSEN P.A.**
2  11201 North Tatum Blvd., Suite 110
   Phoenix, Arizona  85028-6037
3  (602) 254-6071
   rtraulsen@bmt-law.com
4

5              **SUPERIOR COURT OF THE STATE OF ARIZONA**

6                      **COUNTY OF MARICOPA**

7  LUCY PINDER, an individual, ABIGAIL          NO.    CV 2018-054268
   RATCHFORD, an individual, ANA
8  CHERI, an individual, IRINA                  **COMPLAINT**
   VORONINA, an individual,
9                                               1. **Misappropriation of Likeness**
           Plaintiffs,
10                                              2. **Violation of the Lanham Act, 15**
   v.                                              **U.S.C. § 1125(a)**
11
   4716, INC., d/b/a HI LITER, an Arizona       3. **False Light Invasion of Privacy**
12 Corporation; and DOES 1 through 20,
   inclusive,
13
           Defendants.
14

15                       **INTRODUCTION**

16      1.      Plaintiffs are LUCY PINDER, ABIGAIL RATCHFORD, ANA CHERI and

17 IRINA VORONINA (collectively herein referred to as "Plaintiffs"). They are professional

18 models, business women, and well-known social media personalities.

19      2.      Defendants are 4716, INC., d/b/a HI LITER (hereinafter the "Defendant Club",

20 "the Club" or "HI LITER"), and DOES 1 through 20, inclusive, agents of Defendant Club

21 and/or presently unnamed third parties who upon information and belief are responsible for

22 the misappropriation of Plaintiff's images and likenesses as alleged in this Complaint

23 (collectively herein referred to as "Defendants").

24      3.      Defendants have pirated and altered the images, likeness and/or identity of each

25 Plaintiff, and posted the same in advertisements or promotions and on Defendant Club's

26 websites including its social media platforms, for purely self-serving commercial purposes.

27      4.      Having operated a business in the adult entertainment industry, Defendants

28 were, or should have been, well aware of the standard negotiation process over terms of use,

1  conditions of release, licensing issues, and other contractual incidences related to use and
2  exploitation of images for Defendants' commercial benefit.

3      5.      Despite being well aware of an obligation to do so, Defendants never negotiated
4  for or purchased any image of any Plaintiff. On the contrary, Defendants circumvented the
5  typical arms-length negotiation process entirely and pirated the images. In doing so,
6  Defendants deprived each Plaintiff of the right to say "no," to protect her image, brand and
7  reputation, and gained a windfall by using and altering the images of professional and
8  successful models for Defendants' own commercial purposes without having to compensate
9  the models a single penny for such usage.

10     6.      Had each Plaintiff been afforded the opportunity to consider whether to consent
11 and release rights as to the use or alteration of any image to Defendants for the promotion of
12 the Defendant Club, each Plaintiff would have promptly and enthusiastically declined to do so.

13     7.      Defendants' misappropriation of Plaintiffs' likenesses, furthermore, encouraged
14 among the public and Defendants' business invitees and patrons the false perception that each
15 Plaintiff endorses, supports, participates in or attends the types of events hosted at the
16 Defendant Club.

17     8.      Defendants' conduct is misleading and deceptive. Defendants' conduct is
18 injurious to each Plaintiff by falsely and fraudulently representing that each Plaintiff depicted
19 in the misappropriated images is somehow affiliated with Defendants, has contracted to
20 perform at and/or participate in events at the Defendant Club and/or has been hired to
21 promote, advertise, market or endorse the Defendant Club, its business and services of being a
22 partially nude strip club/gentlemen's club and other activities offered at the Club. They also
23 create the false and fraudulent perception that each Plaintiff depicted in the advertisements
24 will attend each event and participate in the activities advertised.

25     9.      By using the Plaintiffs' images without authority or consent as alleged in this
26 Complaint, Defendants have jeopardized each Plaintiff's professional image, brand and
27 marketability.

28     10.     Defendants' conduct has also deprived each Plaintiff the opportunity to engage

1    in arms-length negotiations regarding the terms and conditions of use of their images,

2    including the term of any release, remuneration per image or use, or the ability to decline the

3    business opportunity entirely.

4    **JURISDICTION AND VENUE**

5        11.    This case arises under state law and jurisdiction is appropriate in the Superior

6    Court for the State of Arizona pursuant to Article VI § 14 of the Arizona Constitution, and

7    ARS § 12-123.

8        12.    Additionally, as a court of general jurisdiction pursuant to the Arizona

9    Constitution this Court has concurrent jurisdiction over Plaintiffs' Lanham Act (15 U.S.C. §

10   1125(a)(1)(A)) claim because no law gives federal courts exclusive jurisdiction over this cause

11   of action.

12       13.    Venue is proper in this Court pursuant to ARS § 12-401 because Defendant HI

13   LITER does business and resides in Maricopa County.

14   **PARTIES**

15   **Plaintiffs:**

16       14.    Plaintiff LUCY PINDER ("PINDER") is, and at all times relevant to this action

17   was, an English model, actress, spokesperson, host and reality television star. As a model,

18   PINDER has appeared in numerous magazines including *FHM, Loaded*, the *Daily Star*, on

19   *FHM's* list of the "100 Sexiest Women in the World" for three straight years and appeared on

20   the final cover of *Nuts*. PINDER has been featured on large international advertising

21   campaigns for major brands such as Unilever/Lynx (Axe Deodorant) and Camelot (National

22   Lottery). As an actress, PINDER appeared as a contestant on the television shows "*Celebrity

23   Big Brother*", "*I'm Famous and Frightened*", "*Soccer AM*", "*Weakest Link*", "*Hotel Babylon*",

24   "*Dream Team*", and "*Bo! in the USA*".  She was a presenter on MTV's "*TMF*" and was the

25   host of "*Nuts TV*".  She has starred in the films "*The Seventeenth Kind*", "*Age of Kill*" and

26   "*Warrior Savitri*". PINDER has a combined total of close to 2.1 million followers on her

27   Facebook, Instagram and Twitter accounts.

28       15.    Plaintiff ABIGAIL RATCHFORD ("RATCHFORD") is, and at all times

3

relevant to this action was, an American model, actress and spokesperson. As a model, RATCHFORD has appeared in a number of magazines including, *Zoo, Maxim, Playboy* and *Innocent*. She has been featured in numerous billboard campaigns on Sunset Blvd. RATCHFORD has also appeared on various television programs, including multiple guest roles on ABC, E! and most recently, NBC's *"Parks and Recreation"*. She appears frequently on the show *TMZ* where they have coined her "The Sweetheart". RATCHFORD has been featured as a model for a number of designers including Michael Costello, walking in his Stello Spring Collection show during this year's LA Fashion Week. RATCHFORD has close to 7.5 million followers on Instagram and 4 million on Facebook.

16.     Plaintiff ANA CHERI ("CHERI") is, and at all times relevant to this action was, an American model and resident of Westminster, California. She has been a business woman and a spokesperson. As a model, CHERI has focused on fitness and health. She works for Shredz Supplements as a Brand Ambassador and as a Motivational Speaker.  As such, she obtained several NPC Bikini titles and appeared in *Muscle and Fitness* Magazine. She was also a *Playboy* Playmate.  CHERI has over 11.1 million followers on Instagram, over 6 million followers on Facebook and 211,000 followers on Twitter.

17.     Plaintiff IRINA VORONINA ("VORONINA") is, and at all times relevant to this action was, a professional model, actress, and television personality. She was a *Playboy* Playmate. As a model, VORONINA has appeared in numerous magazines including *FHM*, *Maxim, Max* (Italy), *Ocean, Shape, 944, Knockout, Q* (UK), and *People* (Australia).  She was named "Model of the Year" by *Kandy* Magazine based on the highest number of digital issue downloads on iPad and iPhone. VORONINA has also modeled for international brands such as SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour, among others. VORONINA was a St. Pauli Girl Beer spokesmodel, led a year-long public relations tour across the United States for the beer brand, and became the first ever St. Pauli Girl to ring the NYSE closing bell. As a spokesmodel, VORONINA was the main host of *Playboy* Radio's weekly show, "Playmate Club." VORONINA has appeared in *"Reno 911"*, *"Balls of Fury"*, and *"Towelhead"*.  She has appeared on the television show *"Svetlana"*, on the live action

show "*Saul of the Mole Men*", and as a guest star on Nickelodeon's "*iCarly*". VORONINA has a large social media following with 3.7 million followers on Facebook and 700,000 Instagram followers.

**Defendants:**

18.     Based on publicly available records, and further upon information and belief, Defendant 4716, INC., operating and doing business as HI LITER is a limited liability corporation organized and existing under the laws of the State of Arizona with its principal place of business at 4716 North 12th Street, Phoenix, Arizona, 85014.

19.     At all relevant times mentioned herein the Defendant Club held itself out and has held itself out to be a "Gentleman's Club" (i.e., a strip club) that engages in the business of entertaining its patrons with beverage sales and sales of dance and other performances by topless women at HI LITER Gentlemen's Club in Phoenix, Arizona.

20.     Plaintiffs are unaware of the true names and capacities of Defendants named herein as unidentified DOES 1 through 20, inclusive (hereinafter referred to as "DOES"), and, therefore, sues such Defendants by such fictitious names. Plaintiffs will seek leave of court to amend this Complaint when the true names of said Defendants are ascertained. Plaintiffs are informed and believe and on such information and belief allege that each of the Defendants named by such a fictitious names at all times mentioned in this complaint were, the agent(s), servant(s), or employer of each of the other Defendants and that, in doing the acts alleged herein, were acting within the course and scope of said agency, service, or employment, and with the permission and consent of each of the other Defendants, and are, in some manner, responsible for the acts and omissions as alleged herein and are, therefore, liable to Plaintiffs for the damages alleged herein.

## FACTUAL ALLEGATIONS AS TO ALL CAUSES OF ACTION

**Defendants Use Website and Social Media Platforms for Marketing:**

21.     Upon information and belief, the Defendant Club coordinates its advertising, marketing and promotional activities through, among other things, active and dynamic use of its website, among others, and various coordinated social media promotions through

Facebook, Twitter, Instagram and Tumblr pages ("Social Media Accounts"), among others.

22.    Defendants' marketing and promotional activities are publicly accessible through the World Wide Web, various social media outlets and affirmative prospect marketing.

23.    Plaintiffs are informed and believe and on such information allege that Defendants further promote their business by and through the use of marketing strategies including, but not limited to, the following: social media (such as Instagram [with 367 followers], Facebook [with 2,139 followers], and Twitter [with 506 followers]); flyers, commercials, and posters. At all times relevant to this Complaint Defendants had actual and exclusive control over the contents contained within and/or displayed on each of said marketing devices.

24.    Upon information and belief, Defendant manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/hilitershowclub) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being "Phoenix's Premiere Gentlemen's Club" with "Sexy Entertainment That Will Not Disappoint". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through their own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

25.    Upon information and belief, Defendant manages, operates and/or controls an "Instagram account" (accessible via the URL: https://www.instagram.com/hiliteraz/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being the "First and Best Topless Club in Phoenix!". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram account through their own personal acts of posting items on the Instagram Account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

6

26.     Upon information and belief, Defendant manages, operates and/or controls a "Twitter profile" (accessible via the URL: https://twitter.com/hiliterclub) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being an "Excellent Choice" with "Both Homegrown and National Beauties that Are Sure to Please". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its Twitter profile through their own personal acts of posting items on the Twitter profile, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter profile.

27.     Upon information and belief, Defendant manages, operates and/or controls a website (accessible via the URL: http://www.hiliterclubaz.com) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Defendant Club as being the "Valley's Hottest Gentleman's Club with Countless Beautiful Topless Women!". Defendants have at all times relevant to this Complaint exercised actual control over the contents displayed on its website through their own personal acts of posting items on the website, or by expressly permitting and condoning another person(s)' act of posting items on the website.

28.     Defendants have used each Plaintiffs' images and likenesses in advertisements and marketing displays on Defendant's social media accounts to generate additional revenue, increase sales, and promote the patronage of the Defendant Club.

**Plaintiffs Are Professional Models and Their Images Are Commercially Valuable:**

29.     Each Plaintiff is a professional model who earns a living by promoting her image and likeness to select clients, companies, commercial brands, media, social media and entertainment outlets for the advertisement of products and services, as well as the promotion of their own reputation and brand for modeling, acting, hosting, and other opportunities.

30.     Each Plaintiff's career in modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

31.     Each Plaintiff commands substantial sums of money for the licensed commercial

1  use of her image.

2  32.    A model's reputation directly impacts the commercial value associated with the

3  use of ones' image, likeness, or identity to promote a product or service and as such, Arizona

4  common law has recognized that the person has the right to control the commercial

5  exploitation of her name, likeness and identity.

6  33.    Each Plaintiff is a professional model in the ordinary course. Each Plaintiff

7  seeks to control the commercial use and dissemination of her image and, thus, actively

8  participates in vetting and selecting modeling, acting, brand spokesperson, or hosting

9  engagements.

10  34.    In the modeling industry, reputation is critical. Endorsing, promoting,

11  advertising or marketing the "wrong" product, or working in a disreputable industry can

12  severely impact a model's career by limiting or foreclosing future modeling or brand

13  endorsement opportunities. Conversely, association with high-end companies, products, or

14  magazines can enhance and amplify a model's earning potential and career opportunities by

15  making a model more sought after and desirable.

16  35.    As set forth below, each Plaintiff's image, likeness and/or identity has been

17  misappropriated and intentionally altered by or at the direction of the Defendants, without

18  Plaintiffs' consent for use in its online marketing scheme designed to promote the Defendant

19  Club.

20  **The Misappropriated Images:**

21  36.    The Defendant Club unlawfully posted and/or displayed the Plaintiff's images

22  and likenesses at least six times, on their Facebook page, in connection with advertising HI

23  LITER.

24  37.    Defendants posted PINDER's image and likeness on Defendant Club's

25  Facebook page on or about November 23, 2017.

26  a.    Defendants' use was unauthorized and for a commercial purpose.

27  b.    PINDER is readily identifiable in the misappropriated image. No

28  reasonable person in Defendants' position would mistakenly believe that

8

Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with PINDER to advertise, promote, market or endorse the Defendant Club.

    d.    PINDER has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

    e.    Defendants never sought permission or authority to use or alter PINDER's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    f.    PINDER never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

    g.    Defendants neither offered nor paid any remuneration to PINDER for the unauthorized use or her image.

    h.    Defendant's use and alteration of PINDER's image creates the false perception that PINDER had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to benefit Defendants' commercial interests.

38.    Defendants posted RATCHFORD's image and likeness on Defendant Club's Facebook page on or about June 7, 2017.

    a.    Defendants' use was unauthorized and for a commercial purpose.

    b.    RATCHFORD is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

    c.    Defendants never hired or contracted with RATCHFORD to advertise, promote, market or endorse the Defendant Club.

    d.    RATCHFORD has never been employed by Defendants or contracted

with Defendants to participate in events at the Club.

e.  Defendants never sought permission or authority to use or alter RATCHFORD's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.  RATCHFORD never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.  Defendants neither offered nor paid any remuneration to RATCHFORD for the unauthorized use or her image.

h.  Defendant's use and alteration of RATCHFORD's image creates the false perception that RATCHFORD had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to benefit Defendants' commercial interests.

39.  Defendants posted CHERI's image and likeness on Defendant Club's Facebook page on or about May 25, 2017.

a.  Defendants' use was unauthorized and for a commercial purpose.

b.  CHERI is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.  Defendants never hired or contracted with CHERI to advertise, promote, market or endorse the Defendant Club.

d.  CHERI has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.  Defendants never sought permission or authority to use or alter CHERI's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.  CHERI never gave permission, or assigned, licensed or otherwise

consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.   Defendants neither offered nor paid any remuneration to CHERI for the unauthorized use or her image.

h.   Defendant's use and alteration of CHERI's image creates the false perception that CHERI had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to benefit Defendants' commercial interests.

40.   Defendants posted VORONINA's image and likeness on Defendant Club's Facebook page on or about December 23, 2016 and twice on December 25, 2016.

a.   Defendants' use was unauthorized and for a commercial purpose.

b.   VORONINA is readily identifiable in the misappropriated image. No reasonable person in Defendants' position would mistakenly believe that Plaintiff was an employee or agent of the Club or otherwise affiliated with the Club.

c.   Defendants never hired or contracted with VORONINA to advertise, promote, market or endorse the Defendant Club.

d.   VORONINA has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

e.   Defendants never sought permission or authority to use or alter VORONINA's image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

f.   VORONINA never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse the Defendant Club.

g.   Defendants neither offered nor paid any remuneration to VORONINA for the unauthorized use or her image.

h.   Defendant's use and alteration of VORONINA's image creates the false

perception that VORONINA had consented or agreed to promote, advertise, market and/or endorse the Defendant Club to benefit Defendants' commercial interests.

## COUNT I

### Violation of Common Law Right of Publicity: Misappropriation of Likeness

### (*All Plaintiffs vs. All Defendants*)

41.     Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

42.     Arizona recognizes a common law right of publicity whereby Plaintiffs hold the exclusive right to control the public dissemination of their name and likeness for commercial use.

43.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of the Plaintiffs without their express consent to such use.

44.     Nevertheless, in violation of Arizona law, Defendants published, printed, displayed and/or publicly used the Plaintiffs' images, likenesses and identity on their website and social media outlets, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Defendant Club, and its events and activities.

45.     Each of the Plaintiff's faces and/or body are shown in each advertisement, and are clearly lighted and readily identifiable and distinguishable.

46.     Plaintiffs never consented to Defendants' use of their images, likenesses or identities for any purpose.

47.     Defendants misappropriated Plaintiffs' images in clandestine fashion without their knowledge and without even attempting to acquire Plaintiffs' permission.

48.     The Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images for commercial gain, by posting the images to Defendants' social media platforms and/or website in an effort to market the Defendant Club

and its activities and events; in the alternative, and at a minimum, the Defendant Club acted with reckless indifference to Plaintiffs' legal rights by expressly permitting, allowing and condoning Doe Defendants 1-20 to post Plaintiffs' images on its website and/or social media platforms for the purpose of marketing and advertising the Club.

49.     Defendants are in the adult entertainment business, and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

50.     Nonetheless, Defendants circumvented the appropriate licensing and negotiating process thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

51.     Defendants have caused and will continue to cause irreparable harm to the Plaintiffs, their reputations and brands by attributing to Plaintiffs their involvement with Strip Clubs, partially nude entertainment, and Plaintiffs' association in such activities.

52.     Defendants also have damaged the Plaintiffs as a direct and proximate result of their unauthorized use of their images, likenesses and/or identity without compensating the Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their likenesses in an amount to be established by proof at trial.

53.     As a further direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

## COUNT II

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)

#### (All Plaintiffs vs. All Defendants)

54.     Plaintiffs hereby incorporate by reference each and every allegation set forth in

the foregoing paragraphs as if fully alleged herein.

55.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

56.     Defendants used Plaintiffs' images, likenesses and/or identities as described herein without authority in order to create the perception that the Plaintiffs' worked at or was otherwise affiliated with the Defendant Club, endorsed the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of their images in order to advertise, promote, and market the Defendant Club and Defendants' business activities.

57.     Defendants' use and alteration of the Plaintiffs' images, likenesses and/or identities to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

58.     Defendants' unauthorized use and alteration of the Plaintiff's images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that the Plaintiffs worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of their images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that the Plaintiffs would participate in or appear at the specific events promoted in the advertisement.

59.     Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or would appear in person at the Defendant Club's events and activities.

60.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage of her images in order to promote Defendants' business or the Club's events and activities.

61.     Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to visit the Club and participate in events at the Club and had a material effect and impact on the decision of patrons and prospective patrons to visit Defendants' business establishment.

62.     Defendants' advertisements, promotions and marketing of the Club and events at the Club occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure traffic and patronage to their establishment.

63.     Defendants' unauthorized use of the Plaintiffs' images, likenesses and/or identities as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

64.     Defendants knew or should have known that their unauthorized use of the Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described in this Complaint.

65.     Defendants' unauthorized use and alteration of the Plaintiff's images, likenesses and/or identities, as described herein violates 15 U.S.C. §1125(a) and was wrongful.

66.     Defendants' wrongful conduct as described herein was willful.

67.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive the Plaintiffs of their property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to the Plaintiffs.

68.     The method and manner in which Defendants used the images of the Plaintiffs further evinces that Defendants were aware of and/or consciously disregarded the fact that the Plaintiffs did not consent to Defendants' use of the images to advertise Defendants' business.

69.     Defendants have caused and will continue to cause irreparable harm to the Plaintiff's, their reputations and brand by attributing to the Plaintiff's their involvement with Strip Clubs, partially nude entertainment, and Plaintiff's association in such activities.

70.     Defendants also have damaged the Plaintiffs as a direct and proximate result of their unauthorized use of their images, likenesses and/or identity without compensating the Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their likenesses in an amount to be established by proof at trial.

71.     As a further direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

72.     Defendants' conduct was purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their business, increase profits, and avoid paying money to legally acquire the right to commercial use of the Plaintiffs' images, and consequently, exceptional relief is warranted pursuant to 15 U.S.C. §§ 1116, and 1117(a), entitling Plaintiffs to treble damages and reasonable attorneys' fees.

## COUNT III

### False Light Invasion of Privacy

#### (All Plaintiffs vs. All Defendants)

73.     Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

74.     Defendants' posting of Plaintiffs' images on its website and/or social media platforms, as alleged, created the false and misleading impression that Plaintiffs approved of and participated in some manner in the Defendant Club's business activities, i.e., selling

access to partially nude female dancers and entertainers.

75. This impression is both misleading and false.

76. The misappropriated images were published by Defendants on the World Wide Web and/or publicly accessible and viewable social media platforms, and thus, constituted public statements.

77. The impression created about the Plaintiffs would be highly offensive to a reasonable person.

78. Defendants knew their unauthorized usages of the Plaintiff's images, likenesses and/or identity was misleading. Defendants knew that Plaintiffs never worked at the Defendant Club, promoted the Defendant Club, or authorized the Defendant Club to use their likenesses to advance Defendants' business interests. Defendants nevertheless posted and/or authorized the posting of the images of Plaintiffs with impunity.

79. Defendants' conduct was willful, driven by the impulse to save thousands of dollars on hiring its own models and photographers and acquiring the appropriate licensing to use those models' images in their advertisements and promotions.

80. Defendants acted with reckless indifference about whether the posting of Plaintiffs' images, as alleged, would create a false and misleading impression about the Plaintiffs.

81. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered harm to their professional reputation as well as general damages including mental and emotional damages.

82. Defendants acted with malice; their conduct was purely profit driven and in reckless and callous disregard to placing Plaintiffs in a false light and giving the impression that Plaintiffs were involved in, agreed with, and condoned the activity of stripping for or providing adult entertainment to Defendants' business invitees. Accordingly, Defendants' conduct warrants the imposition of punitive damages to the fullest extent permitted by law.

**PRAYER FOR RELIEF**

WHEREFORE, each Plaintiff individually respectfully prays that this Court grant

Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, and awards as follows:

  1.  As to Count I, actual damages and disgorgement of profits attributable to Defendants' misappropriation of the Plaintiff's likeness;

  2.  As to Count II, actual damages and disgorgement of profits attributable to Defendants' misappropriation of the Plaintiff's likeness, as well as treble damages and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1116, and 1117(a);

  3.  As to Count III, appropriate compensatory damages for the Plaintiff's emotional and mental suffering and harm to professional reputation;

  4.  As to Count III, an award of appropriate punitive damages;

  5.  As to Counts I and II, prejudgment interest on the sum at the appropriate legal rate;

  6.  For costs of suit; and

  7.  For such other and further relief as the Court deems just.

## JURY DEMAND

WHEREFORE, each Plaintiff individually and collectively demands a jury trial on all causes and all issues so triable.

DATED this 24th day of May, 2018.

**BEGAM MARKS & TRAULSEN, P.A.**

By _____

Richard P. Traulsen
11201 North Tatum Blvd. Suite 110
Phoenix, Arizona 85028

**BOUCHER LLP**

Raymond P. Boucher
Brian M. Bush
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

Attorneys for Plaintiffs

18

Exhibit B

Richard P. Traulsen – State Bar #016050
**BEGAM, MARKS & TRAULSEN P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona  85028-6037
(602) 254-6071
rtraulsen@bmt-law.com

## SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| LUCY PINDER, an individual, ABIGAIL RATCHFORD, an individual, ANA CHERI, an individual, IRINA VORONINA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>4716, INC., d/b/a HI LITER, an Arizona Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | NO.   CV 2018-054268<br><br>**SUMMONS**<br><br><br>If you would like legal advice from a<br>Contact the Lawyer Referral Serv<br>602-257-4434<br>or<br>www.maricopalawyers.org<br>Sponsored by the<br>Maricopa County Bar Associati |

THE STATE OF ARIZONA TO DEFENDANT: 4716, INC., d/b/a HI LITER, an Arizona Corporation

      YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona - whether by direct service, by registered or certified mail, or by publication - you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after the date of such service upon the Director. Service by registered or certified mail within the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. RCP 4; ARS Sections 20-222, 28-502, 28-503.

      YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

      YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the

1   necessary filing fee, within the time required, and you are required to serve a copy of any

2   Answer or response upon the plaintiffs' attorney. RCP 10(D); ARS Section 12-311; RCP 5.

3            Requests for reasonable accommodation for persons with disabilities must be

4   made to the division assigned to the case by the party needing accommodation or his/her
    counsel at least 3 judicial days in advance of a scheduled proceeding. Requests for an

5   interpreter for persons with limited English proficiency must be made to the division assigned
    to the case by the party needing the interpreter and/or translator or his/her counsel at least 10

6   judicial days in advance of a scheduled court proceeding.

7            The name and address of Plaintiffs attorney is:

8       Richard P. Traulsen

9       **BEGAM, MARKS & TRAULEN, P. A.**
        11201 North Tatum Blvd. Suite 110

10      Phoenix, Arizona  85028-6037

11      Raymond P. Boucher
        Brian M. Bush

12      **BOUCHER LLP**
        21600 Oxnard Street, Suite 600

13      Woodland Hills, California 91367-4903          COPY

14      SIGNED AND SEALED this date:_____

15      CLERK                                    MAY 2 5 2018

16      By_____
17      Deputy Clerk

    METHOD OF SERVICE:
18      [X] Private Process Service

19

20

21

22

23

24

25

26

27

28

                                          2

Exhibit C

1  Richard P. Traulsen – State Bar #016050
   **BEGAM, MARKS & TRAULSEN P.A.**
2  11201 North Tatum Blvd., Suite 110
   Phoenix, Arizona  85028-6037
3  (602) 254-6071
   rtraulsen@bmt-law.com
4

5              **SUPERIOR COURT OF THE STATE OF ARIZONA**

6                        **COUNTY OF MARICOPA**

   CV 2018 - 054268

7  LUCY PINDER, an individual, ABIGAIL
   RATCHFORD, an individual, ANA          NO.
8  CHERI, an individual, IRINA
   VORONINA, an individual,               **PLAINTIFFS' CERTIFICATE RE:**
9                                         **COMPULSORY ARBITRATION**
          Plaintiffs,
10
   v.
11
   4716, INC., d/b/a HI LITER, an Arizona
12 Corporation; and DOES 1 through 20,
   inclusive,
13
          Defendants.
14

15         The undersigned certifies that he knows the dollar limits and any other limitations set

16 forth by the local rules of practice for the applicable superior court, and further certifies that

17 this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the

18 Arizona Rules of Civil Procedure.

19         DATED this 24th day of May, 2018.

20                        **BEGAM MARKS & TRAULSEN, P.A.**

21

22         By_____

23              Richard P. Traulsen
                11201 North Tatum Blvd. Suite 110
24              Phoenix, Arizona  85028

25              **BOUCHER LLP**

26              Raymond P. Boucher
                Brian M. Bush
27              21600 Oxnard Street, Suite 600
                Woodland Hills, California 91367-4903
28
                Attorneys for Plaintiffs

Exhibit D

1 | Richard P. Traulsen – State Bar #016050
**BEGAM, MARKS & TRAULSEN P.A.**
2 | 11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
3 | (602) 254-6071
rtraulsen@bmt-law.com
4

Raymond P. Boucher – CA State Bar #115364
5 | Brian M. Bush – CA State Bar #294713
(Admitted Pro Hac Vice)
6 | **BOUCHER LLP**
21600 Oxnard Street, Suite 600
7 | Woodland Hills, California 91367-4903
(818) 340-5400
8 | ray@boucher.la
bush@boucher.la
9

Attorneys for Plaintiffs
10

11 | **SUPERIOR COURT OF ARIZONA**

12 | **MARICOPA COUNTY**

13

14 | LUCY PINDER, an individual, ABIGAIL
RATCHFORD, an individual, ANA CHERI,
an individual, IRINA VORONINA, an
15 | individual,

NO.   CV2018-054268

16 | Plaintiffs,

**ACKNOWLEDGEMENT AND
ACCEPTANCE OF SERVICE**

17 | v.

18 | 4716, INC., d/b/a HI LITER, an Arizona
Corporation; and DOES 1 through 20,
19 | inclusive,

(Assigned to the Honorable Bruce R.
Cohen)

20 | Defendants.

21 | The undersigned acknowledges that he is counsel for Defendant 4716, Inc. and further

22 | acknowledges receipt of the Summons, Complaint, and Plaintiff's Certificate Re Compulsory

23 | Arbitration and hereby accepts service of the same for Defendant 4716, Inc.

24 | This Acceptance is made and filed pursuant to Rule 4(f) of the Arizona Rules of Civil

25 | Procedure.

26 | DATED this 31st day of July, 2018.

27

28

**DOW LAW OFFICES**

By: _____

David W. Dow
3104 E. Camelback Road #281
Phoenix, Arizona 85016
Attorney for Defendant 4716, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2018, I electronically transmitted the foregoing document to the Clerk of the Maricopa County Superior Court using Electronic Case Filing through AZTurboCourt for filing and electronic service to the assigned judge in this case, The Honorable Bruce R. Cohen.

By _____

2

Exhibit E

BEGAM MARKS & TRAULSEN, P.A.
RICHARD P. TRAULSEN
STATE Bar # 016050
11201 N. TATUM BLVD, SUITE 110
PHOENIX, AZ  85028
(602)254-6071
ATTORNEY FOR THE PLAINTIFF

IN THE SUPERIOR COURT
MARICOPA COUNTY, STATE OF ARIZONA

|  |  |
|---|---|
| LUCY PINDER, AN INDIVIDUAL, ABIGAIL RATCHFORD, AN INDIVIDUAL, ANA CHERI, AN INDIVIDUAL, IRINA VORONINA, AN INDIVIDUAL,<br><br>    PLAINTIFF<br><br>           vs<br><br>4716, INC., D/B/A HI LITER, AN ARIZONA CORPORATION; AND DOES 1 THROUGH 20, INCLUSIVE,<br><br>    DEFENDANT | NO. CV2018-054268<br><br>CERTIFICATE OF ATTEMPTED SERVICE BY PRIVATE PERSON<br><br>ASSIGNED TO THE HONORABLE JUDGE: |

STATE OF ARIZONA     )   ss.
County of Maricopa   )

The undersigned, being first duly sworn, states:

1.  That I am fully qualified, pursuant to RCP 4(d), to serve
    process in this cause:

2.  That on 05/30/2018 I received the following documents:

    a)   SUMMONS & COMPLAINT
    b)   CERTIFICATE ON COMPULSORY ARBITRATION
    c)
    d)
    e)
    f)
    g)
    h)
    i)
    j)
    k)
    l)

Track Down, Inc.                Client ID No....: 18803
P.O. Box 33020                  Field Report No.: 2172624      (v4.35)
Phoenix, AZ 85067
(602) 252-8521

-1-

3.  That the person served does not have any military obligations, except as noted below.

4.  That if this is an affidavit of posting of a trustee's sale, a due and diligent effort to ascertain whether or not trustors are affiliated with the military service was done, and no one could be found at the posting location who had knowledge of the trustors except as noted below.

5.  That I personally served copies of the above documents, on the person at the time, place and manner as follows:

### ATTEMPTED SERVICE

Upon 4716, Inc. dba Hi Liter, by attempting service on Robert Miller, Statutory Agent, at 405 N Beaver St #2, Flagstaff AZ 86001. On 6/5 at 4:40 PM, I spoke with office employee, Brenda, who advised attorney Robert Miller retired 2 years ago and this office has no affiliation with him or the defendant. There is no further information available.

| | |
|---|---|
| 0 Document(s) served: | $0.00 |
| 0 W/G(s) served: | $0.00 |
| 0 Sales Notices posted: | $0.00 |
| 30 Miles: | $72.00 |
| Min. Miles Total | $0.00 |
| Document Prep.Fee | $10.00 |
| Witness Fee | $0.00 |
| Filing Fee | $0.00 |
| Additional Cost | $25.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| TOTAL | $107.00 |

I certify under penalty of perjury that the foregoing is true and correct. Executed on: Monday the 11th Day of June, 2018

*Debra K Worner*

Debra K. Worner        PS20050002
Certified in Yavapai County

Track Down, Inc.
P.O. Box 33020
Phoenix, AZ 85067
(602) 252-8521
        -2-                    2172624        (v4.35)

Exhibit F

1  David W. Dow (SBA #007377)
2  Jennifer L. Levine (SBA #033071)
   **DOW LAW OFFICE**
3  3104 E. Camelback Rd. #281
4  Phoenix, Arizona 85016
   Office: 480-776-5039
5  Fax: 480-945-0553
6  ddowlaw1@gmail.com
   jlevine@ddowlaw.com
7  *Attorneys for Defendant 4716, Inc.*

8

9            **SUPERIOR COURT OF THE STATE OF ARIZONA**

10                    **COUNTY OF MARICOPA**

11 | LUCY PINDER, an individual; ABIGAIL          | Case No.: CV2018-054268
     RATCHFORD, an individual; ANA
12   CHERI, an individual; IRINA
13   VORONINA, an individual,                      | **NOTICE OF FILING NOTICE OF**
                                                    | **REMOVAL**
14                    Plaintiffs,

15          v.

16   4716, INC., d/b/a/ HI LITER, an Arizona
17   Corporation; and DOES 1 through 20,
     inclusive,
18
19                    Defendant.

20        Pursuant to U.S.C. §§1331, 1441, and 1446, Defendant 4716 Inc., d/b/a HI

21 LITER, by and through undersigned counsel, hereby gives Notice to the Clerk of

22
   the Maricopa County Superior Court and to Plaintiffs that Defendant is removing
23
24 this action to the United States District Court for the District of Arizona.  The

25 Complaint asserts a claim arising under federal law, specifically the Lanham Act,

26
   15 U.S.C. § 1125(a).   A copy of the Notice of Removal is attached hereto as
27
28 Exhibit 1.


NOTICE OF FILING NOTICE OF REMOVAL - 1

RESPECTFUALLY SUBMITTED this 7th day of August, 2018.

**DOW LAW OFFICE**

By: */s/ David W. Dow*
David W. Dow

**CERTIFICATE OF SERVICE**

Original Efiled this 7th day of August, 2018.

Clerk of the Maricopa County Superior Court
Turbocourt Efiling system.

Copies Eserved via TurboCourt
this 7th day of August, 2018 to:

Richard P. Traulsen
11201 North Tatum Blvd Suite 110
Phoenix, Arizona 85028
Attorneys for the Plaintiff

Raymond P. Boucher
Brian M. Bush
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367

*/s/ Jennifer L. Levine*

NOTICE OF FILING NOTICE OF REMOVAL - 2