1    **WO**

2

3

4

5

6         **IN THE UNITED STATES DISTRICT COURT**

7             **FOR THE DISTRICT OF ARIZONA**

8

9   Lucy Pinder, et al.,                  No. CV-18-02503-PHX-RCC

10         Plaintiffs,              **ORDER**

11   v.

12   4716 Incorporated, et al.,

13         Defendants.

14

15        This is the Court's second summary judgment order in a series of cases across the

16 country pertaining to the unlawful use of models' photos in advertisements for strip clubs.[1]

17 Here Plaintiffs Lucy Pinder, Ana Cheri, and Irina Voronina ("Plaintiffs")[2]  allege that

18 Defendant 4716 Incorporated, d/b/a Hi Liter ("Defendant" or "Hi Liter"), posted Facebook

19 advertisements using Plaintiffs' image without permission. Because the issues are nearly

20 identical, much of the analysis in the instant order reflects the previous case with few

21 exceptions. Plaintiffs raise state law claims of right of publicity/misappropriation of

22 likeness, and false light/invasion of privacy. In addition, Plaintiffs raise a two-part claim

23 under the Lanham Act for false advertising and false association.[3] Both parties have filed

24

25   ―――――――――――

26 [1] The cases pending in the District of Arizona are listed in the Court's summary judgment order in *Skinner v. Tuscan Inc.*, No. CV–18–00319–TUC–RCC, Doc. 61 (D. Ariz. Oct. 7,

27 2020).
[2] Plaintiff Abagail Ratchford was dismissed on April 28, 2020. (Doc. 67.)

28 [3] Plaintiffs' Lanham Act claim is named in the Complaint under one cause of action, but as explained in Section V, the Complaint provides notice of two distinct claims.

motions for summary judgment.[4] This matter has been extensively briefed, and oral arguments were held on September 15, 2020. (Docs. 74–75, 81–82, 89–90. 94–95, 97–98, 100, 102, 105.) The Court now rules.

## I. Summary Judgment Standard of Review

A court may grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" when the disputed facts "could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). But a disputed fact is only material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party establishes there is no genuine issue of material fact, then the non-movant must come forth with evidence that there is a genuine disputed factual issue that may change the outcome of the lawsuit in the non-movant's favor. *Id.* at 248, 250. This showing does not have to be unquestionable; however, the non-movant "may not rest upon the mere allegations or denials of [his] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248; Fed. R. Civ. P. 56(e).

In general, a court must consider the evidence while making all inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. However, with dueling summary judgment motions, the court "review[s] each motion . . . separately, giving the non[-]moving party for each motion the benefit of all reasonable inferences." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017). "Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). Meaning, evidence from one party is not limited to that party's motion

---

[4] Also pending before the Court are three motions to exclude expert witnesses. (Docs. 78–80.) The Court addresses these motions in a separate order.

for summary judgment; a court may consider evidence from defendant's motion to determine plaintiff's motion and vice versa. *See Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001).

However, the necessary showing for each party to obtain summary judgment depends upon that party's burden of proof. And so, "a moving party with the burden of persuasion must establish beyond controversy every essential element of [its claim]." *Pub. Storage v. Sprint Corp.*, No. CV 14–2594–GW PLAX, 2015 WL 1057923, at *4 (C.D. Cal. Mar. 9, 2015) (quoting *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)). The party without such burden need only (1) provide "evidence negating an essential element" of a claim or (2) demonstrate that the non-moving party "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Cos., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## II. Admissibility of Facebook Advertisements

As a threshold matter, Defendant argues that the entire case should be dismissed because Plaintiffs cannot establish the proper foundation for the offending Hi Liter Facebook postings and therefore the ads are not admissible. Because Plaintiffs did not see the images, Defendant states, there is no litigant who could testify to first-hand knowledge of the postings, and so there is no way to prove that they were posted on Defendant's Facebook page. At the summary judgment stage, Defendant claims, this failure is fatal to Plaintiffs' case.

Plaintiffs counterargue that they are suing Defendant for using Plaintiffs' images in advertising, and how the advertisements ended up on Defendant's Facebook page is irrelevant. Plaintiffs state that they do not need to have personally viewed the publication for the offending posts to be considered admissible and stated during oral argument that they would have no problem laying the foundation for the ads. Furthermore, Defendant has never directly denied the postings were on its Facebook page, and Defendant's claim that there were unauthorized posts at some point prior to litigation is a weak attempt to divert

its liability.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). But, "it is the admissibility of the *contents* of evidence—not its *form*—that determines whether evidence is admissible for purposes of avoiding summary judgment." *Ericson v. City of Phoenix*, No. CV–14–01942–PHX–JAT, 2016 WL 6522805, at *8 (D. Ariz. Nov. 2, 2016) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003), *cert. denied*, 541 U.S. 937 (2004)) (emphasis in original); *Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the non[-]moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (permitting evidence that is inadmissible in form as long as it is possibly admissible at trial); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (stating evidence need not be admissible in form if it meets requirements of Fed. R. Civ. P. 56). Moreover, even "[w]hen a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993).

Depending on the circumstances, the content of the Facebook ads may be admissible through several avenues. A Facebook post may meet the requirements of a business record under Federal Rule of Evidence 803(6) that is self-authenticating under Rule 902(11). *See, e.g.*, *Randazza v. Cox*, No. 12–cv–2040–JAD–PAL, 2014 WL 1407378, at *4 (D. Nev. Apr. 10, 2014) (YouTube video self-authenticating if certified by custodian of records in accordance with hearsay exception for business record); *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) (Facebook pages and YouTube videos self-authenticating under 902(11)). Under this scenario, no extrinsic evidence of authenticity would be necessary for admissibility. Fed. R. Evid. 902(11). While this may not be sufficient to demonstrate who posted the offending ads, it could establish that the post existed on Hi Liter's Facebook page, and that the images have not been altered in any fashion. *See Hassan*, 742 F.3d at

134.

In addition, Plaintiffs may be able to lay the foundation for admission of the screenshot of the Facebook page through an internet archive service. Archived websites may sometimes be afforded judicial notice. *See, e.g., Under a Foot Plant Co. v. Exterior Design, Inc.*, No. 6:14–cv–01371–AA, 2015 WL 1401697, at *4 (D. Md. Mar. 25, 2015) ("District courts have routinely taken judicial notice of content from The Internet Archive."); *but see Open Text S.A. v. Box, Inc.*, No. 13–cv–04910–JD, 2015 WL 428365, at *7 (N.D. Cal. Jan. 30, 2015) (archived website printouts not afforded judicial notice without certification from representative).

Moreover, even circumstantial evidence can authenticate the content of a Facebook post "where a document's contents, in conjunction with other circumstances, reflect distinctive characteristics." *See People v. Curry*, No. 2–18–0148, 2020 WL 5423045, at *9 (Ill. App. Ct. Sept. 10, 2020) (citing *United States v. Browne*, 834 F.3d 403, 411–12 (3d Cir. 2016)); *see also State v. Griffith*, 449 P.3d 353, 357 (Ariz. Ct. App. 2019) (Facebook post "may be admitted if reasonable extrinsic evidence tends to show the party made it."); *United States v. Farrad*, 895 F.3d 859, 878 (6th Cir. 2018) (Facebook photo of defendant admissible when other evidence suggested photos were what they claimed to be). The alleged Hi Liter advertisement's web address indicates it originated from "hilitershowclub," the ads use the Hi Liter username, and the webpage includes distinctive background imagery and fonts. These elements could plausibly make the advertisements sufficiently distinctive and admissible.

In addition, Defendant has not submitted evidence that the offending advertisements were *not* posted on its Facebook page. Defendant merely offers an inchoate argument that perhaps someone else may have infiltrated Defendant's Facebook and posted the Hi Liter advertisements without Defendant's knowledge. Defendant offers deposition testimony from Bob Jung—the advertising creator for Hi Liter—stating the ads do not look like his work. But Jung falls short of stating he did not create the ad. Defendant also vaguely asserts that at some point prior to litigation an unknown person made unauthorized postings on Hi

Liter's Facebook page. But Defendant does not state that the unauthorized advertisements were those at issue in this case, nor does it submit evidence of the imposter's work or records showing it changed its Facebook password in response to the unauthorized use. Finally, Defendant claims that there are various Facebook pages that utilize the Hi Liter name, and potentially any of those websites could have posted the ads at issue here. However, Defendant has presented no evidence of other Hi Liter Facebook pages. The evidence offered does not demonstrate the posts at issue here were not on the Hi Liter website, but Defendant's vague assertions raise a credibility issue better addressed by a fact finder. Regardless, none of Defendant's suppositions demonstrate that Plaintiffs will be unable to lay the foundation for the advertisements' content.

Because the copy of Hi Liter's Facebook page may be admissible at trial, and there is no indication that Plaintiff will be unable to lay the requisite foundation, this Court can consider the content for the purposes of this motion. *See Fraser*, 342 F.3d at 1037; *see also Perpall v. Pavetek Corp.*, No. 12–CV–0336 (PKC), 2017 WL 1155764, at *29 (E.D.N.Y. Mar. 27, 2017). While the Court reviews the advertisements for summary judgment, it makes no final determination about admissibility at trial.

### III.        Arizona False Light – Invasion of Privacy

#### a.  Statute of Limitations

The parties agree that Plaintiffs' false light claims are governed by a one-year statute of limitations under Arizona Revised Statute § 12–541. *See Watkins v. Arpaio*, 367 P.3d 72, 77 (Ariz. Ct. App. 2016). However, the parties disagree when these claims accrued. Defendant posits that the clock begins on the date of publishing. Plaintiffs counter that the continuing wrong doctrine applies, and the clock does not start until the photos were removed.

Plaintiffs lean heavily on *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) to show that the continuing wrong doctrine applies to their false light claims. The Court is baffled as to Plaintiffs' interpretation of this case. *Flowers* addressed the continuing tort doctrine as it related to alleged defamation in a defendant's memoirs. *Id.* The Ninth Circuit

explained that the continuing wrong doctrine applies when there is no way to determine a singular moment that caused harm. *Id.* However, it noted that there is no such incertitude surrounding the publication of a book; the defamation occurs at the moment of publication. *Id.* Moreover, there were no further actions by defendant obscuring the accrual date. *Id.* In fact, the Ninth Circuit commented, "The only thing 'continuing' about this tort was [the plaintiff's] protracted failure to bring a lawsuit when she had the chance." *Id.* The court affirmed the dismissal of all tort claims related to the book publication—including the false light claim. *Id.* at 1133. Like *Flowers*, the dates Defendant published its advertisements on social media are identifiable dates of harm that preclude the continuing wrong doctrine. Even though the posting exists for viewing after the publication, this does not constitute a continuing injury.

Plaintiffs also cite *Cruz v. City of Tucson*, 401 P.3d 1018 (Ariz. Ct. App. 2017). This case is inapposite. Similar to *Flowers*, in *Cruz* the court explained that under the continuing wrong doctrine, there must be a continuous series of wrongful actions for the accrual date to begin at termination. *Id.* at 1023. In this case, just as in *Cruz*, there are no continuous actions. Instead, there is one discrete posting of a Plaintiff's image per claim against Defendant. As such, the continuing wrong doctrine does not apply and cannot prolong Plaintiffs' time for filing.

Moreover, the Arizona appellate court has declined to utilize the continuing wrong doctrine in the context of false light claims. *Watkins*, 367 P.3d at 77. Instead, Arizona evaluates the statute of limitations for false light in the same manner as defamation, recognizing that accrual occurs on the date of publication. *See Kimm v. Brannan*, No. CV–14–1966 JWS, 2017 WL 3535015, at *7 (D. Ariz. Aug. 17, 2017), *aff'd,* 779 F. App'x 439 (9th Cir. 2019); *Larue v. Brown*, 333 P.3d 767, 772 (Ariz. Ct. App. 2014) (accrual occurs in defamation when material is posted on the web, and "later circulation of the original publication does not start the statute of limitations anew"); *Lim v. Sup. Ct. in and for Pima Cnty.*, 616 P.2d 941, 942 (Ariz. Ct. App. 1980) (defamation accrual is time of publication); *cf.* Uniform Single Publication Act, Ariz. Rev. Stat. Ann. § 12–651(A) (cannot have

1  multiple actions in tort based on one publication).

2      On May 25, 2018, Plaintiffs filed the instant Complaint in state court. Therefore,

3  any photo forming the basis of a false light claim must have been posted within one year

4  of the filing of the Complaint. Plaintiffs allege four images were posted on Defendant's Hi

5  Liter Facebook account. A photo of Plaintiff Voronina was allegedly posted on December

6  23, 2016 and republished on December 25, 2016 along with a second photo published on

7  December 25, 2016. A photo of Plaintiff Pinder was posted on November 23, 2017, and a

8  photo of Plaintiff Cheri was posted May 25, 2017. There is no factual dispute as to these

9  publication dates. Therefore, the Court grants summary judgment to Defendant as to the

10  false light claims for Plaintiff Voronina's photos because they are outside of the one-year

11  statute of limitations.

12      *b.  False Light Invasion of Privacy*

13      For the two remaining photos, genuine issues of material fact remain precluding

14  summary judgment.

15      To state a claim of false light, a plaintiff must demonstrate "(1) the defendant, with

16  knowledge of falsity or reckless disregard for the truth, gave publicity to information

17  placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed

18  would be highly offensive to a reasonable person in the plaintiff's position." *Doe v.*

19  *Oesterblad*, No. CV–13–01300–PHX–SRB, 2015 WL 12940181, at *5 (D. Ariz. June 9,

20  2015) (quoting *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct.

21  App. 2015)); *see* Restatement (Second) of Torts ("Rstmt. 2d Torts") § 652E (Am. Law

22  Inst. 1977). Actions shedding a false light on another need not be plainly stated; implication

23  can be sufficient. *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 787 n.2 (Ariz. 1989).

24      i.  Defendant's Facebook Advertisement

25      Defendant's summary judgment motion alleges Plaintiffs have not supported their

26  false light claim because they cannot show the advertisements originated from Defendant's

27  Facebook page. It posits that Plaintiffs' exhibits are merely inadmissible photocopies that

28  cannot support Plaintiffs' claim. Moreover, Defendant's advertising executive did not

recognize the offending ads as his work, and Defendant believes its Facebook account had been hacked at some time prior to litigation. It appears Defendant is suggesting if the ads were on its Facebook, someone else posted the offending photos without Defendant's knowledge.

Defendant has not met its burden of showing Plaintiff is unable to prove Defendant posted the ads. As stated previously, there are several ways in which Plaintiffs may have the advertisements admitted into evidence. (*See* Sec. II.) Moreover, none of Defendant's statements explicitly undermine Plaintiffs' contention. Rather they are vague, accusatory assertions that side-step a straightforward proclamation that either the advertising executive did not create the ad, or that if an ad were on Defendant's page, it was one of those created by the unauthorized phantom Hi Liter promoter.

But neither has Plaintiff demonstrated that it is beyond controversy that Defendant *did* post the offending photos. Again, as noted above, Plaintiffs have not yet shown the advertisements originated from Defendant's Facebook page and must lay the proper foundation. Whether Defendant posted Plaintiffs' photos on its Facebook page is a genuine issue of material fact precluding summary judgment.

## ii.   Falsity of Social Media Posts

Defendant then argues that the claim fails because the advertisements made no false statements about Plaintiffs and the photos were not manipulated in any manner. Moreover, Plaintiffs' pictures were risqué, so using the unadulterated photo did not misrepresent the nature of the photos. However, "[a] false light cause of action may arise when . . . the publication of true information creates a false implication about the individual." *Reynolds v. Reynolds* ("*Reynolds*"), 294 P.3d 151, 156 (Ariz. Ct. App. 2013) (quoting *Godbehere*, 783 P.2d at 787).

Defendant's reasoning ignores the visual and written innuendo within its advertising. The misrepresentation is not necessarily the reproduction of the photos, but the connection between Plaintiffs and Defendant's strip club. In the first advertisement, Plaintiff Pinder is shown dressed in her undergarments placing a turkey in the oven. The

advertisement reads, "Happy Thanksgiving from The HiLiter! Here's hoping you all get enough 'stuffing!'" (Doc. 75–2 at 12.) By placing the image with the words, Defendant has created a visual connection between Pinder's photo and Hi Liter. But even without the direct link between the photo and the text, the advertisements could conceivably cast Plaintiffs in a false light. The second advertisement includes a photo of Ana Cheri in a sports bra and shorts. The post proclaims, "Happy Thursday from the HiLiter!" (Doc. 75–2 at 8.). A fact finder could decide that Plaintiffs' images and the corresponding text in the advertisements falsely suggest the Plaintiffs were somehow affiliated with, promoted, or employees at Defendant's strip club.

Moreover, Plaintiffs have presented survey evidence suggesting the reproduction of Plaintiffs' photos and Defendant's corresponding advertisement could confuse customers as to Plaintiffs involvement with Hi Liter. Therefore, whether Defendant's use of Plaintiffs' photos in its advertisements placed Plaintiffs in a false light is a genuine issue of material fact precluding summary judgment.

### iii.  Highly Offensive

Next, Defendant claims that since Plaintiffs are models who have been photographed in various degrees of undress, the placement of Plaintiffs' photos in connection to its strip club could not possibly be highly offensive. The Court finds that assertion debatable. The Court agrees with the district judge in *Geiger v. Creative Impact, Inc.*, No. CV–18–01443–PHX–JAT, 2020 WL 3545560, at *3 (D. Ariz. June 30, 2020), that simply because a woman has modeled in risqué clothing (or even previously worked at a strip club) does not mean a reasonable person in a similar position could not be offended by the suggestion that the person is an exotic dancer at the defendant's strip club. *See also Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1136–38 (7th Cir. 1985) (publishing plaintiff's *Playboy* photos in *Hustler* without permission could cast plaintiff in highly offensive and false light). Whether the use of Plaintiffs' images in association with Hi Liter is highly offensive is a genuine issue precluding summary judgment.

### iv.  Major Misrepresentation

Defendant next argues that any misrepresentation must be major, and its advertising was not. "[T]o qualify as a false light invasion of privacy, the publication must involve 'a major misrepresentation of [the plaintiff's] character, history, activities or beliefs,' not merely minor or unimportant inaccuracies." *Godbehere*, 783 P.2d at 787 (quoting Rstmt. 2d Torts § 652E cmt. C) (alteration in original). Like the "highly offensive" inquiry, a fact finder may find that linking a model to entertainment at a strip club presents a major misrepresentation; even when—as here—the model has previously modeled in the nude, posed with a stripper pole, or played an exotic dancer in film. However, a fact finder could also determine that any alleged misrepresentation is minor considering the nature of the photographs and the history of the Plaintiffs. The Court cannot decide this issue as a matter of law.

#### v.   No Mental or Emotional Injury

Defendant next asserts that Plaintiffs' false light claims only permit relief for mental and emotional injury; therefore, since Plaintiffs have not pleaded such harm their claims must fail.

"Unlike defamation, false light does not protect reputation or good name, but rather protects mental and emotional interests." *Reynolds*, 294 P.3d at 156 (quoting *Godbehere*, 783 P.2d at 787). Nonetheless, for a false light claim "a plaintiff may recover even in the absence of reputational damage, as long as the publicity is unreasonably offensive and attributes false characteristics." *Godbehere*, 783 P.2d at 787. "In [this] type of case, the false innuendo created by the highly offensive presentation of a true fact constitutes the injury." *Reynolds*, 294 P.3d at 156 (alteration in original).  A judge does not determine as a matter of law "any actual damage to [the plaintiff's] reputation" nor does he decide "any emotional damage or damage to sensibility." *Desert Palm Surgical Group*, 343 P.3d at 450. These determinations are left to the fact finder after deciding whether a plaintiff has proven the false light claim. *See id.*

Here, Plaintiffs allege Defendant's social media posts falsely implied Plaintiffs endorsed or worked at Hi Liter. Furthermore, as noted previously, there is a genuine issue

1  whether this inference was highly offensive. Because Plaintiffs raise a triable case that

2  Defendant's advertisement with Plaintiffs' photos led to false innuendo about Plaintiffs'

3  association with Hi Liter strip club, and that this insinuation was highly offensive, the

4  extent and nature of the damage is for the fact finder to decide.

5        vi.   Actual Malice – Knowledge of Falsity or Reckless Disregard

6        When a plaintiff is a public figure, a false light claim must also demonstrate actual

7  malice. *Godbehere*, 783 P.2d at 788. Actual malice occurs when a defendant makes a

8  statement knowing the statement was false or with reckless disregard of the truth. *See*

9  *Miller v. Servicemaster by Rees*, 851 P.2d 143, 145 (Ariz. Ct. App. 1992). In general, actual

10 malice is a factual issue. *Id.*

11       Plaintiffs argue that Defendant acted with actual malice because it knew that

12 Plaintiffs were not associated with, had not endorsed, and did not work for Hi Liter, but,

13 nevertheless, posted the advertisements suggesting Plaintiffs did so. Defendant asserts that

14 the advertisements were not false because the ads make no statements that Plaintiffs were

15 associated with Hi Liter. In addition, Defendant claims the photos were not published

16 "knowingly" because Defendant outsourced the creation of its advertisements to Bob Jung

17 and told him he could only use photos for which he had permission. Because Jung exceeded

18 the scope of this permission, Defendant believes actual malice cannot be presumed.

19       First, Defendant ignores the connotations that could be made by linking its

20 advertisement for Hi Liter with Plaintiffs' images, despite the knowledge that Plaintiffs

21 were in no way associated with the strip club. Whether this link was in reckless disregard

22 to the truth depends upon a fact finder's determination of the postings' degree of innuendo

23 (whether they placed Plaintiffs in a false light) and offensiveness (whether the false light

24 was highly offensive to a similarly situated person). These are material factual issues.

25       Second, simply having Jung as an agent does not necessarily absolve Defendant of

26 liability. When Defendant gave Jung the ability to create the advertisements, Defendant

27 knew it did not photograph its own dancers for advertising. So, Defendant was aware that

28 the images in its advertising were not associated with Hi Liter and could be construed as

falsely implying whomever was in the image was associated with Hi Liter. Informing Jung he needed to use publicly available photos does not undermine Defendant's knowledge.

Furthermore, as stated in *Geiger v. Creative Impact Inc.*, Defendant has not shown it probed into whether the images actually used were permissible, and so Defendant's argument that actual malice is lacking is unpersuasive. *See Geiger*, 2020 WL 3545560, at *5 (failing to investigate the origin and permission of models' photos used in advertising raised a genuine issue of fact as to actual malice).

Finally, Defendant claims that actual malice cannot be proven because Jung did not recognize the advertisements as his work, and someone made unauthorized posts on Defendant's Facebook. These are vague statements. They neither deny nor admit that the work was Jung's. Nor do they explain how Jung's work differs from the offending advertisements. Whether his testimony undermines the element of actual malice is a credibility determination that requires the fact finder to make certain inferences that are not appropriate to settle as a matter of law. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge . . . ."); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility . . . should be left to a jury.").

The Court finds there are too many factual issues to settle this claim as a matter of law.

**IV. Arizona Right of Publicity – Misappropriation of Likeness**

> *a. Common Law Right of Publicity v. Statutory Right*

> > i. <u>Statutory Intent to Limit Right of Publicity to Soldiers</u>

Defendant argues that Plaintiffs' right of publicity claim fails because Arizona has recognized a right of publicity for soldiers alone under Arizona Revised Statute § 12–761(B). If the state legislature had desired a broader scope for the right of publicity, Defendant asserts, it would have extended that right by statute.

Defendant ignores the circumstances leading up to the promulgation of the statute. Limiting the right of publicity was not the state legislature's primary consideration; it was

the immediate desire to allow families of deceased soldiers a means of recovery. During the Iraq War, anti-war advocates used the names of dead soldiers to sell merchandise in protest. *Frazier v. Boomsma*, CV–07–08040–PHX–NVW, 2007 WL 2808559, at *1 (D. Ariz. Sept. 27, 2007). Families of the deceased soldiers sought to end the use of their loved one's names for political purposes and addressed their complaints to the Arizona State Legislature. *Id.* at *2. Arizona Revised Statute § 12–761(B) and its preceding Senate Bill 1014 were "a direct result of these complaints." *Id.*

At the time, the Arizona law did not recognize that a right of publicity was descendible, and so the legislators' intent was likely to extend that right beyond the grave. Originally, the right of publicity was considered a subset of the right of privacy under Restatement (Second) of Torts § 652C. *See* Restatement (Third) of Unfair Competition § 46, cmt. b (1995) ("Rstmt. 3d Unfair Competition") ("The principal historical antecedent of the right of publicity is the right of privacy."); *Geiger*, 2020 WL 3545560, at *7 n.7 (acknowledging that the Arizona District Courts previously found the state right of publicity to be a right of privacy under Rstmt. 2d Torts). But, under the right of privacy umbrella, the right of publicity would not survive the death of a plaintiff. *See* Ariz. Rev. Stat. Ann. § 14–3110 (2007) ("Every cause of action, except . . . invasion of the right of privacy, shall survive the death of the person entitled thereto . . . ."); *see* Rstmt. 3d Unfair Competition §49 cmt. b ("In most jurisdictions the interest in personal privacy cannot be assigned and does not survive death."). However, the Arizona appellate court in *In re Estate of Reynolds v. Reynolds* ("*In re Reynolds*") clarified that the right of publicity is in essence a property right under Restatement (Third) of Unfair Competition §§ 46–49 that survives death, and that the statute precluding right to privacy claims by descendants did not apply to the right of publicity. 327 P.3d 213, 214–15, 217 (Ariz. Ct. App. 2014). But *In re Reynolds*, a 2014 case, would not have been available at the time the Senate Bill was written in 2007—only the statutory language and district court cases interpreting the right of publicity as a privacy right for which descendants could not recover.

The proposed Senate Bill reflects an intent to expand the right of publicity to

decedents' families. The original proposed bill was limited to deceased soldiers; it specified that the right of publicity survived death and could be exercised by a soldier's family member or designated representative. Unauthorized Use of the Name, Portrait or Picture of a Deceased Soldier, S.B. 1014, 48th Leg., 1st Sess. (Ariz. 2007), available at https://www.azleg.gov/legtext/48leg/1R/bills/sb1014p.pdf (last visited August 30, 2020); *see also* Ariz. Rev. Stat. Ann. §§ 12–761(B) & (E) (utilizing similar language to proposed bill, but specifying the soldier is the holder of the right of publicity for which certain family members can recover upon the soldier's death).

Furthermore, the statutory language acknowledges that it was not meant to override the right of privacy, which encompassed the right of publicity. *See* Ariz. Rev. Stat. Ann. § 12–761(E) ("The rights and remedies provided in [A.R.S. § 12–761] supplement any other rights and remedies provided by law, including the common law right of privacy."). This is further evidence that the concern when enacting the statute was to expand the right of publicity, not limit it.

Defendant excerpts Arizona State Senator Robert Blendau's statements from the hearing of the Senate Committee on Commerce and Economic Development in an attempt to show that the Arizona State Legislature "deliberately chose to limit this right to the American military, and not to extend it to civilians." (Doc. 39 at 9.) Again, this ignores the context. The broader focus of the hearing was on inclusivity of the families' descendible interests, not exclusivity. Blendau was concerned that a deceased movie star's estate could recover from injury (through copyright) but not a soldier's family (through a right of publicity). He commented, "You know when a movie star or something dies, like John Wayne, you're not allowed to use his image without his permission but yet the newspaper is able to publish . . . an obituary and an article and maybe we can look under those laws to figure out what kind of language we can use that would . . . let the paper . . . publish news or whatever they wanted, but keep people from using [the soldier's likeness] in a manner that . . . the relatives would not support." Hearing on S.B. 1014 before the S. Com. & Econ. Dev. Comm., 48th Leg., 1st Sess. (Ariz. 2007) (statement of R. Blendau, Member,

S. Com. & Econ. Dev. Comm.), available at http://azleg.granicus.com/MediaPlayer.php?view_id=13&clip_id=54 (last visited August 30, 2020). The Senate Committee did not consider whether private citizens should also enjoy a right of publicity; the focus was on establishing a right for the families of fallen soldiers while balancing freedom of speech. Defendant's contention that the legislature could have extended that right to private citizens if it wanted disregards that the statute was in response to a specific situation, and the extension of the right of publicity to other persons was not part of the discussion. Therefore, the Court cannot find that this statute was meant to limit the right of publicity to soldiers alone. *See Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 547 (Ariz. 2014) ("If the legislature seeks to preempt a cause of action [,] . . . the law's text or at least the legislative record should say so explicitly.") (citation omitted) (alteration in original).

### ii. Arizona Recognizes Right of Publicity

In addition, Arizona has recognized a right of publicity at the appellate level, and there is no indication that it would not recognize this right at the Arizona Supreme Court. *See, e.g.*, *In re Reynolds*, 327 P.3d at 216 ("We hold that Arizona recognizes a right of publicity."); *see also Geiger*, 2020 WL 3545560, at *7 n.6 (following the state appellate court's lead, right of publicity is an Arizona cause of action under Rstmt. 3d Unfair Competition); *ACT Grp., Inc. v. Hamlin*, No. CV–12–567–PHX–SMM, 2014 WL 4662234, at *8 (D. Ariz. Sept. 18, 2014), *reconsideration denied,* 2015 WL 11117191, at *2 (D. Ariz. Apr. 27, 2015) (acknowledging that in accordance with *In re Reynolds*, a right of publicity exists under Arizona law); *Pooley v. Nat'l Hole-In-One Ass'n*, 89 F. Supp. 2d 1108, 1112 (D. Ariz. 2000) ("The Court sees no reason why a claim for invasion of the right of publicity should not be recognized in Arizona.").

Defendant's argument that the recognition of the right of publicity in *In Re Reynolds* is merely obiter dictum is unpersuasive. Obiter dictum is "a statement 'made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive).'" *See Best Life Assur. Co. of Calif. v. C.I.R.*, 281 F.3d 828, 834 (9th Cir. 2002) (quoting *Black's Law*

- 16 -

*Dictionary* 1100 (7th ed. 1999)). The court's holding was crucial to its analysis of plaintiff's claim; the Arizona Court of Appeals specifically held that there was a right of publicity, but the plaintiff had not established the elements necessary to state a claim. *Geiger*, 2020 WL 3545560, at *7 n.6.

### iii.  Restatement Not in Conflict

Defendant next asserts that the statutory right of publicity under Arizona Revised Statute § 12–761(B) preempts the Restatement's right of publicity because they are in conflict. The Court disagrees. Even where the state court has not acknowledged a common law right, Arizona applies the Restatement in the absence of conflicting law. *Pooley*, 89 F. Supp. 2d at 1111; *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962, 968 (Ariz. 1990). Restatement (Third) of Unfair Competition recognizes the right of publicity. Rstmt. 3d Unfair Competition § 46; *see In re Reynolds*, 327 P.3d at 215; *see also Geiger*, 2020 WL 3545560, at *7 nn.6–7 (finding a right of publicity through both the common law and the application of the Rstmt. 3d Unfair Competition §§ 46–49). Moreover, Defendant has not presented a persuasive argument that the Restatement is preempted because of the statutory extension of the right of publicity to soldiers. *See Orca Commc'ns Unlimited*, 337 P.3d at 547 ("If the legislature seeks to preempt a cause of action [,] . . . the law's text or at least the legislative record should say so explicitly.") (citation omitted) (alteration in original). The soldiers' right of publicity statute clearly states that any rights granted therein supplement those available at common law and as demonstrated *supra*, the legislative intent was not meant to limit the cause of action. *See* Ariz. Rev. Stat. Ann. § 12–761(E) (soldiers' statute meant to supplement any other legal right). So, even if there were no common law right of publicity, there is a right of publicity under the Restatement.

### iv.  Revised Arizona Jury Instructions Not Mandatory Authority

As to Defendant's claim that this Court should not find a right of publicity because the Revised Arizona Jury Instructions ("RAJIs") do not recognize any appellate case law in support, the Court notes that the RAJIs "are standard jury instructions created by the State Bar of Arizona. They are not approved by the Arizona Supreme Court, and their use

is not mandatory." *Thues v. Ryan*, No. CV–13–00644–PHX–NVW, 2014 WL 3571687, at *21 n.7 (D. Ariz. July 21, 2014). This argument, therefore, does not convince the Court it must deny Plaintiffs' cause of action.

In conclusion, the Court finds Arizona recognizes a right of publicity and Plaintiffs may raise this claim.

### b.  Statute of Limitations – Right of Publicity

Having established the right of publicity, the Court now considers whether Plaintiffs' claims are barred by the statute of limitations. Plaintiff raised the statute of limitations issue during oral arguments, and Defendant opined that the limitations period likely mirrored the time for false light claims, but conceded it did not believe the issue was before the Court.

"[A]n affirmative defense is not waived to the extent that . . . the opposing party's own evidence discloses the defense." *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. 1981). Moreover, if the limitations period is addressed "by express or implied consent of the parties[]" the issue may be raised at later points in litigation. *Bush v. Woods*, No. AZ-05-1124-MoSK, 2005 WL 6960185, at *6 (B.A.P. 9th Cir. Dec. 15, 2005) (citing *Haskins v. Roseberry*, 119 F.2d 803, 805 (9th Cir. 1941)); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1984) (untimely statute of limitations defense permissible where there was no prejudice to opposing party and notice was provided in pleadings). Here, the Court may consider the statute of limitations because: (1) Plaintiffs raised the issue, (2) Plaintiffs are not prejudiced by the defense since the limitations period was applicable to their claim from the outset, and (3) Defendant provided notice of the affirmative defense in its Answer. (*See* Doc. 8 at 14, ¶ 88.)

However, when asked its position about the limitations period, Defendant briefly suggested the period was one year but missed its opportunity to further elaborate. Defendant has failed to meet its burden of showing the one-year limit is applicable. *See Electra v. Id. Bus. Holdings LLC*, No. CV-18-01604-SRB, Doc. 179 at 6 (D. Ariz. Sept. 24, 2020) (quoting *Troutman v. Valley Nat. Bank of Ariz.*, 826 P.2d 810, 814 (Ariz. Ct.

App. 1992)) ("[W]hen a defendant asserts the statute of limitations as a defense, the defendant has the burden of proving the complaint falls within the statute.").

### c. Prima Facie Case of Right of Publicity – Misappropriation

Next, the Court finds there are factual issues that preclude summary judgment for either party as to the right of publicity claims. "To prevail on a right of publicity claim, a plaintiff must show (1) the defendant's use of the plaintiff's name or likeness, (2) the appropriation of the plaintiff's name or likeness to the defendant's advantage, (3) lack of consent, and (4) resulting injury." *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1100 (D. Ariz. 2006) (citing *Pooley*, 89 F. Supp. 2d at 1111). Appropriation of likeness is not limited to celebrities. "[T]he identity of even an unknown person may possess commercial value." *In re Reynolds*, 327 P.3d at 215 (quoting Rstmt. 3d Unfair Competition § 46 cmt. d).

### i. Use of Likeness

Overshadowing all of Plaintiffs' claims is Defendant's argument that the Plaintiffs cannot demonstrate Defendant posted Plaintiffs' images on its Facebook page. For the reasons stated in Section III(a)(i), this is a genuine issue of material fact precluding summary judgment.

### ii. Consent

In addition, Defendant seems to suggest that because Plaintiffs were paid for the photos at issue, and some had released the rights to the photos to other entities, Plaintiffs do not own their images and they could be distributed without Plaintiffs' permission. This misses the mark, however, because Defendant never claims it obtained the permission from the other entities for usage. The right of publicity protects a person's ability to control how their likeness is used. Even if Plaintiffs released their image to certain businesses for use, Defendant's business was not one of them. Therefore, there is no dispute that Defendant did not have consent to use Plaintiffs' likeness.

### iii. Agency

Defendant also argues Plaintiffs cannot show that Defendant is liable for posting

1  Plaintiffs' images on its Facebook page because under the agent-principal theory, the
2  principal is not responsible for the torts of the agent when the agent acts outside of the
3  scope of authority granted by the principal. Defendant informed its agent, Bob Jung, that
4  he could not use images without proper licensing. Therefore, it claims, the Court should
5  grant summary judgment in its favor "because Plaintiffs cannot prove Defendant
6  authorized Jung to engage in unauthorized use of the Images and authorized Jung to exceed
7  the scope of his given authority." (Docs. 81 at 7; 89 at 7.)

8  Plaintiffs respond that the right of publicity is a strict liability tort, and it is
9  inconsequential who posted the advertisement. What matters is who benefitted from it.
10  Plaintiffs are correct that Defendant's intent is not pertinent to establishing the elements of
11  a right of publicity claim. *See Pooley*, 89 F. Supp. 2d at 1115 ("[A]n intent to infringe
12  another's right of publicity is not an element of liability."); *cf. Gray v. LG&M Holdings,*
13  *LLC*, No. CV–18–02543–PHX–SRB, at 6 n.4 (D. Ariz. Sept. 23, 2020) (declining to
14  require "actual malice" in right of publicity claim).

15  <u>iv.   Defendant's Advantage and Plaintiffs' Injury</u>

16  Plaintiffs assert that the use of their images created an advantage for Defendant by
17  "getting Plaintiffs to appear for free in the[] advertisements." (Doc. 74 at 5.) In addition,
18  Plaintiffs were injured by "being denied the fair market revenue [they] would have received
19  but for Defendant's misappropriations." (*Id.*) Defendant claims that Plaintiffs cannot prove
20  Defendant obtained an advantage by using Plaintiffs' photos. Furthermore, because
21  Plaintiffs were not denied work, and in certain instances Plaintiffs had released the rights
22  to the images, they cannot prove injury.

23  On a basic level, Defendant was advantaged by its use of Plaintiffs' images. It is
24  evident that strip club customers are more likely to frequent establishments with attractive
25  women, as performer attractiveness is the cornerstone of strip club entertainment.
26  Defendant utilized photos of beautiful women to promote its strip club, therefore,
27  Defendant's inclusion of Plaintiffs' photos in its advertising "enhanced the marketability"
28  of Hi Liter and was "integral" to the advertisement. *See Pooley*, 89 F. Supp. 2d at 1112–

13. In sum, Defendant's use was for the purposes of increasing trade and functioned to its commercial advantage. *See id.*

Moreover, "[i]t is beyond controversy that the failure to pay any Plaintiff for the use of her Image harmed each Plaintiff." *Gray*, CV–18–02543-PHX-SRB, Doc. 122 at 7. Plaintiffs have met their burden of showing Defendant enjoyed a benefit and Plaintiffs suffered an injury.

### v. Identifiability

Defendant next asserts that Plaintiffs' claim fails because Plaintiffs cannot show they are identifiable. It claims that Plaintiffs' survey and report by Martin Buncher does not adequately establish that Plaintiffs are recognizable to Hi Liter patrons.

Where a defendant has used the photographic image of a plaintiff's likeness, "the plaintiff must be reasonably identifiable." Rstmt. 3d Unfair Competition § 46 cmt. d.  But, because an unknown person may bring a right of publicity claim, the identifiability of a plaintiff measures the monetary relief available; it does not measure a plaintiff's ability to establish beyond controversy the essential elements of her claim. *See* Rstmt. 3d Unfair Competition §46 cmt. d ("[T]he identity of even an unknown person may possess commercial value . . . . Thus, an evaluation of the relative fame of the plaintiff is more properly relevant to the determination of appropriate relief.").

Despite Plaintiffs' ability to meet several of the elements, the issue of whether Defendant posted Plaintiffs' images could be decided in favor of either party, and so the Court may not grant summary judgment.

**V. Lanham Act**

*a.  Pleading of False Advertising and False Association Claim*

Count II of Plaintiffs' Complaint raises Lanham Act violations under 15 U.S.C. § 1125(a). This section provides:

**(a) Civil action**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol,

or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). Section (a)(1)(A) is considered an action for "false association." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). False endorsement "is a type of false association claim." *Lemon*, 437 F. Supp. 2d at 1095. Moreover, an action under § (a)(1)(B) raises a "false advertisement" claim. *Lexmark Int'l*, 572 U.S. at 122. Given the factual allegations corresponding to both subsections and recognizing that Plaintiffs' cause of action under the Lanham Act, 15 U.S.C. § 1125, encompassed both § (a)(1)(A) and § (a)(1)(B), Defendant was properly notified of Plaintiffs' false association and false advertisement claims.

### b.  False Advertising – 15 U.S.C. § 1125(a)(1)

Both parties assert that they should be afforded summary judgment on the false advertising claim. However, only Defendant is correct. Plaintiffs must show the following to avoid dismissal of their false advertising claim: (1) that their injury falls within the "zone of interests" that are safeguarded by the Lanham Act, and (2) that the resulting injury was proximately caused by a violation of the Act. *Lexmark Int'l.*, 572 U.S. at 130, 133.

### i.  Zone of Interests

For false advertising claims, the Lanham Act's primary interest is in "protect[ing] persons engaged in commerce against unfair competition" by "making actionable the deceptive and misleading use of marks." 15 U.S.C. § 1127; *Lexmark Int'l*, 572 U.S. at 131.

So, "[t]o come within the zone of interests [in a Lanham Act false advertising claim], a plaintiff [must] allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l*, 572 U.S. at 131–32. If the parties are not directly in competition, a plaintiff must show that the injury plaintiff suffered is "harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

Plaintiffs allege that they suffered an injury to their commercial interests because Defendant pilfered their photos instead of paying for a photo shoot. Lost income from a missed photo shoot could be construed as a financial injury to Plaintiffs, in that the sale of their goods—i.e. their photos—has been impeded. However, any alleged false advertising must also "be harmful to plaintiff's ability to compete with defendant." *Id.* Not being hired by Defendant is not equivalent to not being able to compete with Defendant. Plaintiffs have not shown their competitive edge was affected from Defendant's advertising.

In addition, Plaintiffs' contention that they suffered a competitive commercial injury is undermined because the parties' commercial interests do not overlap. Clearly, the parties are not direct competitors, as Plaintiffs are models and Defendant runs a strip club. But commercial competitive interests need not be direct to successfully allege that a false advertisement led to a commercial injury. *Lexmark Int'l.*, 572 U.S. at 136. Nonetheless, Plaintiffs' bare assertion that their commercial interests overlap with Defendant's is simply not supported by any evidence. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment"). There is no indication that the consumer money would otherwise go to hiring Plaintiffs for modeling if not for Defendant's false advertisement. Moreover, Plaintiffs make no allegations that their ability to obtain modeling jobs has been affected from the false advertisement. *See cf. Geiger v. C&G of Groton, Inc.*, 424 F. Supp. 3d 276, 291–92 (D. Conn. 2019) (denying motion to dismiss false advertisement claim where models' alleged injury to commercial interest was reputational injury affecting plaintiffs' ability to be hired by commercial clients, and injury was proximately caused by defendant's

false advertising). Plaintiffs' speculation is insufficient to show "their position in the marketplace has been damaged." *See Lexmark Int'l*, 572 U.S. at 137.

Moreover, Plaintiffs have produced no evidence that the alleged association with Hi Liter has damaged their reputation or their ability to compete in any fashion. Without direct competition or comparative advertising, Plaintiffs must show actual injury from Defendant's deception and have failed to do so. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011); *see also B. Sanfield Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580–81 (7th Cir. 2001) (indirect competition requires showing of "past or potential" injury); *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 347 (S.D.N.Y. 2019) ("The Second Circuit has expressly disfavored presumptions of harm in cases where the products are not obviously in competition or where the defendant's advertisements make no direct reference to any competitor's products . . . .") (citation and quotation marks omitted).

### ii.  Proximate Cause of Harm

Even if the Court found Plaintiffs' injury implicated the zone of interests, Plaintiffs have not established causation. To state a claim of false advertising, a plaintiff must show that "the plaintiff has been or is likely to be injured *as a result of the false statement*." *Gaby's Bags, LLC v. Mercari, Inc.*, CR 20–00734 WHA, 2020 WL 1531341, at *2 (N.D. Cal. Mar. 31, 2020) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)) (emphasis added). In other words, "[c]ourts have found that causation just requires that the false advertising proximately cause the claimed injury." *Wyndham Vacation Ownership v. Reed Hein & Assocs.*, LLC, No. 6:18–cv–02171–GAP–DCI, 2019 WL 3934468, at *4 (M.D. Fla. Aug. 20, 2019). In general, proximate cause requires that a plaintiff's "economic or reputational injury flow[s] directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes [consumers] to withhold trade from the plaintiff." *Lexmark Int'l*, 572 U.S. at 133. However, a plaintiff "cannot obtain relief without *evidence* of injury proximately caused by [defendant's] alleged misrepresentations." *Id.* at 140 (emphasis in original).

In sum, Plaintiffs cannot show that their injury was caused by false advertising. Plaintiffs' only alleged injury (the loss of photo shoot income) was neither caused by consumers withholding money, nor was it a result of consumer deception; the injury resulted from Defendant's failure to pay for the photos. Defendant was not deceived by its own misleading advertising, and no consumer was hoodwinked into not paying Plaintiffs but instead giving Defendant his or her money. The lost modeling income may be pertinent to other claims—such as the right of publicity—but does not establish the proximate cause necessary for false advertising. *See Gibson v. BTS N., Inc.*, No. 16–24548–Civ–COOKE/TORRES, 2018 WL 888872, at *5 (S.D. Fla. Feb. 14, 2018) (granting summary judgment on plaintiffs' false advertising claim because "compensation for the fair market value of the use of their image" was irrelevant to whether defendant's advertising was false and did not necessarily show proximate cause).

Plaintiffs have failed to support their false advertising claim and, therefore, it must be dismissed.

### c. False Association – 15 U.S.C. § 1125(a)(1)

In essence, the crux of a false association claim depends upon the answer to the question: Would a reasonably prudent consumer in the marketplace be confused? *See* 15 U.S.C. §1125(a); *Lemon*, 437 F. Supp. 2d at 1095. Here, neither Plaintiffs nor Defendant has proven that the undisputed facts conclusively answer this question.

To establish this claim, a plaintiff must demonstrate that a defendant's advertisement was placed in commerce and made a confusing or misrepresentative "false designation of origin, false or misleading description, or representation of fact" that obscured the true characteristics of a defendant's services or goods. *Freecycle Network, Inc. v Oey*, 505 F.3d 898, 902 (9th Cir. 2007). A false representation may cause confusion as to either the source and sponsorship of, affiliation with, or connection to a defendant's goods or services. *See* 15 U.S.C. § 1125(a)(1)(A). In general, "'[l]ikelihood of confusion is a factual determination,' and 'district courts should grant summary judgment motions regarding the likelihood of confusion sparingly.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039 (9th Cir. 2010) (quoting *Thane Int'l,*

*Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002)) (alteration in original).

### i. *Sleekraft* Factors

As noted in the Court's assessment of Plaintiffs' false advertising claim, the parties' markets are not competitive; however, the "goods are related" in that they both use photos of beautiful women to generate income. Plaintiffs are beautiful women who pose for photos for money. Defendant uses photos of beautiful women to entice customers to frequent its establishment.

When the parties' "goods are related, but not competitive," the district court considers eight factors to evaluate confusion. *See AMF, Inc. v. Sleekraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). These include: "(1) the similarity of the marks; (2) the relatedness of the two [parties'] services; (3) the marketing channel used; (4) the strength of [plaintiff's] mark; (5) [defendant's] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). When, as here, the advertisement has been posted online, the most important factors are the first three, named the "Internet Troika." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters.*, 559 F.3d 985, 989 (9th Cir. 2009). Still, "[t]he factors should not be rigidly weighed; [courts] do not count beans." *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

#### 1. Similarity of Marks

Obviously, Defendant's ads are similar to Plaintiffs' images; there is no dispute that the photos in the advertisements are carbon copies of Plaintiffs. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 813 (9th Cir. 1997) (quoting *Sleekraft Boats*, 599 F.2d at 354). This element weighs in Plaintiffs' favor.

#### 2. Relatedness of the Parties' Services or Goods

Here again, Plaintiffs argue that their services are similar because both try to attract clients through the use of images of beautiful women. Further, they argue, both parties are

targeting a similar market through social media. Defendant argues that since Plaintiffs have admitted their celebrity is completely unrelated to Defendant's strip club, Defendant believes this factor should weigh in its favor.

When a plaintiff's commercial value is linked to celebrity status, the goods or services provided are related to the plaintiff's "reasons for or source of . . . fame." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001). "To determine whether goods are related, courts may consider whether the goods are complementary, whether the products are sold to the same class of purchasers, and whether the goods are similar in use and function." *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 893 (N.D. Cal. 2019). Here, Plaintiffs' source of fame is their successful—and, in part, risqué—photoshoots and their social media presence. Their fame is also due to each woman's beauty. Defendant used Plaintiffs' photos on social media to promote its club that spotlights beautiful women. On a broad scale, the goods are similar and complementary in that both use photos of beautiful women on their social media sites to pique viewers' interest in their goods. However, the parties do not sell their goods to the same purchasers. Plaintiffs derive income from being hired for photo shoots; Defendant derives income from customers' entrance fees, entertainment, and drinks at the strip club. This factor tips slightly in Defendant's favor.

### 3.   Contemporaneous Use of Social Media for Marketing

Both parties use identical social media platforms to market, but social media is often used in this manner today. "[T]he shared used of the internet as a marketing channel is ubiquitous and, thus, does not shed much light on the likelihood of consumer confusion." *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1077 (N.D. Cal. 2012) (citing *Network Automation v. Advanced System Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011)). This factor is equivocal.

### 4.   Strength of Plaintiffs' Mark

There is a genuine issue of fact as to whether Plaintiffs are recognizable to members of the community for which Defendant's advertising is focused. For cases involving alleged celebrities, a strong mark is demonstrated by how recognizable the celebrity is

amongst relevant consumers. *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992). Plaintiffs have presented a survey indicating a small percentage of those surveyed felt they recognized Plaintiffs. They have also provided evidence that they have a strong social media following. Defendant has submitted no counter-survey.

However, Defendant has pointed to evidence that suggests Plaintiffs' celebrity success appears to be in the past and their current recognizability is questionable. Moreover, Defendant notes that Plaintiff Pinder resides in the United Kingdom and Plaintiffs Voronina and Cheri live in California, making them less recognizable to Hi Liter patrons living in Arizona. It also states that because Plaintiffs are not strippers, they are less recognizable to strip club patrons. Finally, it claims the survey Plaintiffs rely upon to show a likelihood of confusion is flawed because the methods were faulty. The scale for this factor could tip to either side.

### 5. Defendant's Intent

Defendant suggests it had no intent to confuse the viewer into believing Plaintiffs were affiliated with Hi Liter because it told its advertising creator he could not use any images without the proper permissions. However, Defendant knew that any images used in advertising were not of its own dancers, but never investigated whether the proper permissions were obtained. Defendant's intent and the credibility of Defendant's witnesses are issues of fact that the Court cannot decide here. *Harris*, 183 F.3d at 1051 ("Issues of credibility, including questions of intent, should be left to a jury."); *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge . . . .")

### 6. Evidence of Actual Confusion

A genuine issue as to actual confusion also exists. "[S]urvey evidence may establish actual confusion." *Fortune Dynamic, Inc.*, 618 F.3d at 1035 (quoting *Thane Intern.*, 305 F.3d at 902). Plaintiffs have presented survey evidence indicating that approximately 66 percent of interviewees believed that Plaintiffs would likely participate in the strip club activities at Hi Liter, 80 percent thought Plaintiffs "agreed to sponsor, endorse or promote" Hi Liter, and 89 percent felt that it was very or somewhat likely that the Plaintiffs were

representative of those employees that performed at Hi Liter. (Doc. 78-2 at 22–23); s*ee Warner Bros. Entm't v. Glob. Asylum, Inc.*, No. CV 12–9547 PSG (CWx), 2012 WL 6951315, at *10 (C.D. Cal. Dec. 10, 2012) ("Generally, confusion levels of 25 to 50 percent provide 'solid support' for a finding of likelihood of confusion."). Furthermore, the use of identical pictures in Defendant's advertising increases the likelihood that confusion has occurred. *See BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*, No. 18 CIV. 1621 (NRB), 2019 WL 3202923, at *5 (S.D.N.Y. July 16, 2019) ("[T]he likelihood of confusion is obvious" when defendant's mark imitates plaintiff's).

However, Defendant may undermine the weight a fact finder gives to the survey evidence through questioning the survey methods and the clarity of the questions presented. There is a triable issue here whether these percentages and the identical use constituted actual confusion.

### 7.  Likelihood of Expansion into Other Markets

This factor is inapplicable since Plaintiffs have no intent to enter into the strip club business and have not alleged Defendant's advertising hindered the expansion of their goods in any way.

### 8.  Purchasers' Degree of Care

Plaintiffs argue that little care is exercised by strip club participants because strip clubs are relatively cheap. Defendant does not believe this factor is relevant but offers no explanation why. "[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Kiva Health Brands LLC*, 402 F. Supp. 3d at 894.  Neither party provided evidence of either the cost of strip clubs in general or the sophistication of strip club clientele. These arguments are therefore up for debate.

Because a majority of the *Sleekraft* factors could "tip in either direction" summary judgment as to Plaintiffs' false association claim is inappropriate. *See Fortune Dynamic, Inc.*, 618 F.3d at 1039.

///

### VI. John Doe Defendants

Finally, Plaintiffs have listed twenty unnamed John Doe Defendants in their Complaint. Generally, the use of anonymous appellations to identify defendants is not favored. Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. Because these Defendants are unnamed and there are no factual allegations against them, the Court will dismiss the John Doe Defendants.

Accordingly, IT IS ORDERED:

1) Plaintiffs' Motion for Summary Judgment is DENIED. (Doc. 74.)

2) Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as directed in this Order. (Docs. 81, 89.)

    a. The Motion for Summary Judgment is GRANTED in favor of Defendant for Plaintiff Irina Voronina's false light–invasion of privacy claims. All other false light claims shall proceed to trial.

    b. The Motion for Summary Judgment is GRANTED in favor of Defendant for Plaintiffs' false advertising claims under the Lanham Act.

    c. The Motion for Summary Judgment is DENIED as to Plaintiffs' false association claims under the Lanham Act. These claims shall proceed to trial.

    d. The Motion for Summary Judgment is DENIED as to Plaintiffs' right of publicity claims. These claims shall proceed to trial.

3) John Doe Defendants 1–20 are DISMISSED.

4) A joint proposed pretrial order shall be lodged within thirty (30) days from the date of this Order. The Court shall set a pretrial conference upon receipt of the joint proposed pretrial order. The attorney responsible for trial shall appear and participate in the pretrial conference. At the conference, the Court will set deadlines for filing and disposing of the following matters: proposed voir dire, jury instructions, trial memoranda, deposition testimony to be used at trial, and motions in limine. No trial date is set at this time.

///

///

5)      Should the parties wish to engage in settlement negotiations in front of a Magistrate Judge, the parties shall file a Joint Notice to the Court indicating the desire to have this case referred for settlement.

Dated this 14th day of October, 2020.

_____

Honorable Raner C. Collins
Senior United States District Judge

1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8
9        ,                                        No. CV-XXX-XXXXX-TUC-RCC

10                    Plaintiff,              **[Proposed Joint Pretrial Order]**

11    v.

12        ,

13                    Defendant.

14        Pursuant to the Scheduling Order previously entered, the following Proposed

15    Joint Pretrial Order reflects the agreement of the parties and shall, upon approval of the

16    Court, be incorporated into the Final Pretrial Order:

17    **I.      IDENTIFICATION OF PARTIES AND COUNSEL**

18    **II.     NATURE OF ACTION**

19
20        Provide a concise statement of the type of case, including the cause of action

          and the relief sought.

21    **III.    STATEMENT OF JURISDICTION**

22
23        State the claims and cite the statutes which give this Court jurisdiction over each

          claim.

24    **IV.     CONTENTIONS OF THE PARTIES**

25        With respect to each count of the complaint, counterclaim or cross-claim, and to

26    any defense, affirmative defense, or the rebuttal or a presumption where the

27    burden of proof has shifted, the party having the burden of proof shall list the

28    elements or standards that must be proven in order for the party to prevail on that

claim or defense.

## V.   STIPULATIONS AND UNCONTESTED FACTS

Identify any stipulations reached between the parties and any facts that are uncontested.

## VI.   CONTESTED ISSUES OF FACT

List issues of fact to be tried and determined upon trial.  Each issue of fact must be stated separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

## VII.   CONTESTED ISSUES OF LAW

The following are issues of law to be tried and determined upon trial. Each issue of law must be stated concisely, separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

## VIII.  LIST OF WITNESSES

Each party shall provide a list of witnesses intended to be called at trial. As to each witness, identify whether he or she is a fact or expert witness and include a brief statement of the expected testimony of any expert witness.

The parties shall include the following text in this section of the Proposed Final Pretrial Order: "Each party understands that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another

1  party."

2  **IX.    LIST OF EXHIBITS**

3  Each party shall provide a list of numbered exhibits.  As to each exhibit, the party

4  shall include a description containing sufficient information to identify and

5  distinguish the exhibit.   Further, a statement of either UNCONTESTED or

6  CONTESTED shall follow each listed exhibit.  If contested, a brief statement of

7  the objection by the opposing party shall also follow the listed exhibit.  Exhibits

8  shall be marked according to the instructions received from  the  Court  (which

9  shall be provided approximately two weeks prior to trial).

10  (e.g. – 1. Laboratory Report from the Clinical Immunology Diagnostic Laboratory

11  dated 6/15/14. CONTESTED by *** for relevance, foundation, hearsay, etc.)

12

13  The parties shall include the following text in this section of the Proposed Final

14  Pretrial Order: "Each party hereby acknowledges by signing this joint Proposed

15  Final Pretrial Order that any objections not specifically raised herein are waived."

16  **X.    LIST OF DEPOSITIONS**

17  Portions of depositions that will be read at trial must be listed by the party

18  intending to introduce the same and must include the page and line number(s). A

19  statement of either UNCONTESTED or CONTESTED shall follow every

20  identified portion of each listed deposition.  If contested, a brief statement of the

21  objection by the opposing party shall follow the listed portion of the deposition to

22  be offered.

23

24  The parties shall include the following text in this section of the joint Proposed

25  Final Pretrial Order: "Each party hereby acknowledges by signing this joint

26  Proposed Final Pretrial Order that any deposition not listed as provided herein will

27  not be permitted at trial absent good cause."

28  ///

XI.     **JURY TRIAL or BENCH TRIAL**

A.      <u>For a Jury Trial</u>

Trial briefs (only upon request of the Court), proposed voir dire, deposition testimony, objections to exhibits and depositions, stipulations, interrogatories to the jury, and stipulated jury instructions shall be filed thirty (30) days prior to trial unless otherwise directed by the Court.  Jury instructions which are not agreed upon, together with a concise argument in support of the instruction, shall be filed with the Court and served upon each party at least thirty (30) days before trial. Objections to the non-agreed upon jury instructions shall be filed with the Court and served upon each party fourteen (14) days thereafter.  No replies shall be permitted without prior approval from the Court.  All proposed jury instructions shall conform with Local Rule 51.  Motions in limine shall be filed   no later than thirty (30) days before trial.  Any opposition shall be filed and served fourteen (14) days thereafter.  No replies shall be permitted without prior approval from the Court.

B.      <u>For a Bench Trial</u>

Trial briefs (only upon request of the Court), objections to exhibits, objections to deposition testimony, motions in limine, and stipulations shall be filed and served at least thirty (30) days prior to trial.  Proposed findings of facts and conclusions of law (only upon request of the Court) shall be filed fourteen (14) days prior to trial, or as otherwise directed by the Court.

XII.    **PROBABLE LENGTH OF TRIAL**

Each party shall identify the estimated length of time it will take to present its case.

XIII.   **ADDITIONAL INFORMATION THAT MAY BE HELPFUL TO THE COURT**

A.      <u>Pending Motions</u>: Identify all motions that remain pending on the docket as of the date of this Joint Proposed Pretrial Order.

B.      Any other information that may be helpful to the Court.

## XIV.   INFORMATION FOR COURT REPORTER

In order to facilitate the creation of an accurate record, please file a "Notice to Court Reporter" **one week before trial** containing the following information that may be used at trial:

1.      Proper names, including those of witnesses;

2.      Acronyms;

3.      Geographic locations;

4.      Technical (including medical) terms, names or jargon;

5.      Case names and citations; and

6.      Pronunciation of unusual or difficult words or names.

In addition, please send (or transmit electronically) to the court reporter a copy of the concordance from key depositions.

## XV.   CERTIFICATION

Undersigned counsel for each of the parties in this action do hereby approve and certify:

1.      All discovery has been completed.

2.      The identity of each witness has been disclosed to opposing counsel.

3.      Each exhibit listed herein: (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.

4.      All other form and content of this proposed Joint Pretrial Order.

## XVI.   ADOPTION

The Court may adopt this proposed Joint Pretrial Order at the Pretrial Conference or at a subsequent hearing.

_____         _____

Attorney for Plaintiff                    Attorney for Defendant

- 5 -